THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY
v. THE STEAMBOAT W. G. WOODSIDES.

1. LIABILITY OF STEAMBOATS.   Where a steamboat carried freights from the terminus of a railroad, and delivered them to the different consignees thereof, under a contract with the railroad company, and the officers of said boat, under the direction of the company collected from

the consignees of such freight the charges due thereon for transportation over said road, it was held that the amount thus collected could be recovered in an action against the boat, under section 2116 of the Code of 1851.

*Appeal from Des Moines District Court.*

FRIDAY, JUNE 15.

THE defendant agreed with plaintiff to carry certain freights brought over the line of plaintiff's road; to take such freight from the terminus of said road at East Burlington, and to deliver the same to the consignees thereof at various points up and down the Mississippi river. Upon settlement between the parties thereafter, it appeared that by the direction of plaintiffs, the officers of said boat had collected from the consignees of such freight charges due thereon over the line of said road, not only in a sufficient sum to pay the defendant for its services, but an additional sum to the amount of $440.22, for which the defendant gave to plaintiff a due-bill, upon which, and for said sum, the plaintiff by this suit seeks to recover.

*Hall, Harrington & Hall* for the appellant.

*T. D. Crocker* for the appellee, cited *The Schooner Argyle* v. *Worthington,* 17 Ohio 460, and the cases there cited; *The Steamboat John S. Owen* v. *Johnson,* 2 Ohio State 142.

BALDWIN, J.—The defendant upon the trial of this cause asked the court to give to the jury certain instructions, which were refused. Two of the instructions asked and refused present the points raised by the appellants in this court :

1. "That so far as the plaintiffs claim to recover in this action for freights claimed by plaintiffs, on the railroad, and collected. by the masters and officers of the steamboat W. G. Woodside, the boat is not liable."

2. "That the owners of the boat or the persons who made the contract with defendant, are liable upon the contract for

the amount collected as freights. But the boat can not be so charged." It is conceded by both plaintiffs and defendant that if the defendant is liable in this action, that such liability arises under the second clause of section 2116 of the Code, which provides, that "any boat found in the waters of this State, is liable for all demands or damages accruing from the non-performance or mal-performance of any contract of affreightment, or any contract relative to the transportation of persons or property, entered into by the master, owner, agent, clerk or consignee thereof."

It is submitted by the appellant that although the contracts may have been made, as alleged in the plaintiffs' petition, by the clerk or officers of said boat; and that they as such officers may have collected money due to plaintiffs, for freights on their road, upon goods delivered by said boat, yet the boat being owned by different parties, is not responsible for the amount thus collected by its officers. Also, that the collection of such money for plaintiffs was not a contract, "relative to the transportation of persons or property," and unless it was a contract such as the statute made the defendant liable for, the plaintiffs could not recover.

The question then arises, was that portion of the agreement between plaintiff and defendant, by which the defendant was to deliver such freight to the consignees thereof, and collect and pay over the charges due to plaintiff, a contract *in any manner*, relating to the transportation of freight. The requirements of the shipping, as well as the traveling interests, have caused the various transporting companies to connect with each other, and thus to establish continuous lines for the purpose of accommodating travelers and shippers. Goods are thus passed from one company to another without re-shipment by the owner, until they arrive at the place of destination. Convenience to the carriers of such freight as well as security to the shipper, justifies the custom of paying the charges for such transportation when delivered to the consignee. One company agrees with another, who thus hold themselves out to the world as common carriers,

to receive from time to time their freights, to deliver the same to the owner at the place of destination, to collect all back charges thereon, and to account fully for all monies thus received.

Is this portion of the agreement which requires such collection, and the payment of all such monies due to the parties thus contracted with, not a contract relative to the transportation of property? We think that it is, and is of that kind of a contract, a party in justice should be required to fullfil, and of that character which the legislature, by the section of the statute above referred to, intended should be enforced. It has been held by the Supreme Court of the State of Ohio, under a statute of that State which made steamboats liable for damages "arising out of any contract for the transportation of goods," "that when a boat received certain goods and delivered the same to the owners at the place of destination, and failed or neglected to collect certain charges due on such freight, that such boat would be liable therefor. *Schooner Argyle* v. *Worthington,* 17 Ohio 460; *The Steamboat John S. Owen* v. *Johnson,* 2 Ohio State 142. In this latter case E. S. Johnson shipped on the steamboat John Owen, 94 bbls. of pork, subject to the payment of $1,665 by the consignee, John D. Chester & Co., to the clerk of said boat. The pork was delivered without receiving the $1,665 provided for in the bill of lading. Chester & Co. refused to pay for the pork, and by the decision of the Supreme Court the boat was held liable therefor. The same question was raised by the appellants in that case, that is presented by the appellant in this. Upon this point CALDWELL, J., in pronouncing the opinion of the court, says: "It is said, however, that the claim of the plaintiff does not come within the intent of the statute, that the provision in the bill of lading, relating to the payment of money, does not form a part of the contract for the "transportation of the property," but is outside of that contract, and therefore the boat is not liable. Does this condition in the bill of lading then come within the legitimate scope of the business of a common car-

rier in the transportation of goods? In all cases where goods are directed to a consignee, it is of vital importance that they should be delivered to the person entitled to receive them. This is the great object to be accomplished by their transportation. The business of the common carrier is not performed by merely· carrying them to the locality of their destination. The actual delivery of the goods to the person designated is as important and binding a part of his contract as any other. Nor do we see why the contract should be less binding, because the delivery to the consignee was subject to a condition." "The principle that a vessel is liable on a contract like the one existing in this case, is already decided in the case of the *Schooner Argyle* v. *George Worthington,* 17 Ohio 460."

We think that case analogous to the one at bar, and the reasoning of the judge in that case applicable to this.

Judgment affirmed.